UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:02-CR-0328-G-1 |
| DAVID RAY WALLACE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM OPINION AND ORDER

Before the court is the defendant David Ray Wallace ("Wallace")'s Motion for Designation Recommendation ("Motion for Recommendation") (docket entry 123). In his motion, Wallace asks this court "for a recommendation that [the Bureau of Prisons ("BOP")] retroactively designate the Texas prisons where [Wallace] was previously incarcerated for service of his federal sentence." Brief in Support of Request for Designation Recommendation ("Brief in Support") (docket entry 127) at 1. Such a recommendation, if accepted by the BOP, would effectively shorten Wallace's cumulative time-served by several years. For the reasons set forth below, the court **ADOPTS** the Magistrate Judge's Findings, Conclusions, and Recommendation ("FCR") (docket entry 132) except for Parts II.1 (section beginning "Unrelated Conduct") and II.2 (section beginning "District Court Judgment") and **DENIES** Wallace's motion.

## I. BACKGROUND

### A. Factual Background

On August 21, 2002, Mesquite Police "responded to a call about a suspicious person outside of the caller's home and close to the nearby elementary school." Government's Response to Defendant's Motion for Modification or Reduction of Sentence ("Response") (docket entry 131) at 1. When approached by officers, Wallace received a pat-down and "struggled with an officer to maintain possession of the firearm that was found." *Id.* at 1-2. "After being detained, police discovered that Wallace had what authorities described as a 'rape kit' - a pair of handcuffs, rubber surgical gloves, rope, a hook bladed knife, and a sexual device - numerous pictures cut from adult magazines, and several handwritten notes of a sexual nature with descriptions of girls/women along with vehicle license plate numbers." *Id.* at 2. "Wallace later admitted that he was planning on robbing a nearby convenience store, that he had seen the women described in his notes, found them attractive, and wrote down their license plate numbers so he could look up their addresses." *Id.* Wallace was arrested and charged with unlawful possession of a firearm by a felon in violation of state law. FCR at 1.

On November 8, 2002, and before his prosecution in state court, Wallace was indicted by a federal grand jury and transferred to federal custody under a writ of habeas corpus ad prosequendum. *Id.* at 1-2. On January 29, 2003, a federal jury

found Wallace guilty of being a felon in possession of a firearm and, on May 27, 2003, this court ("the sentencing court" or "the federal sentencing court") sentenced him to 293 months' imprisonment. *Id.* at 2; see docket entry 49. The judgment rendered by the sentencing court "remained silent about the interaction of its federal sentence with any future sentence [that] Wallace might receive from Texas authorities." Brief in Support at 1.

Immediately following Wallace's federal conviction, Wallace was returned to state custody. FCR at 2. Wallace's state charge for unlawful possession of a firearm was dismissed. *Id.* However, Wallace had two prior state charges for theft and possession of a controlled substance, for which he pled guilty and was serving deferred adjudication probation at the time of the instant conduct. *Id.*; see also Presentence Report ("PSR") ¶¶ 56-57. Wallace's probation for these charges was revoked and he was sentenced to eight years for violating the terms of his probation. *Id.* Wallace served the state term of imprisonment from August 2002 to May 18, 2010, at which time he was returned to federal authorities to serve his federal sentence. *Id.*

### B. Procedural History

Wallace filed his Motion for Recommendation on October 1, 2019. The United States filed its Response on November 17, 2020. Magistrate Judge Rutherford issued the FCR on December 11, 2020. Wallace thereafter filed his

Objections to Report and Recommendation ("Objections") (docket entry 135). The United States filed its Response to Defendant's Objections to Report and Recommendation ("Response to Objections") (docket entry 136) on January 29, 2021. Accordingly, Wallace's Motion for Recommendation is ripe for decision.

II. ANALYSIS[1]

---

[1] The court could locate no authority outlining the standard of review regarding a motion for a recommendation of the type at issue here. It appears, however, that the court's decision to issue such a recommendation is wholly within its discretion, as the recommendation is non-appealable. See, e.g., *United States v. Pineyro*, 112 F.3d 43, 45-46 (2d Cir. 1997) (per curiam) ("The district court's recommendation was not binding on BOP, as we have explained. Accordingly, it is not an order from which [the defendant] can appeal. The non-binding recommendation does not fit within the class of final orders appealable either under 28 U.S.C. § 1291 (final decisions of district courts) or 18 U.S.C. § 3742 (final sentencing orders)."); *United States v. McHugh*, 528 F.3d 538, 540-41 (7th Cir. 2008) (concluding, in a slightly different context, that "a recommendation differs from a judgment, and under Article III that difference is fundamental. . . . It means that, although a judge may tender a recommendation to the Executive Branch, the recommendation cannot be treated as if it were a judgment and reviewed or revised by some other judge.").

A down-stream consequence of the non-appealability of such recommendations, however, is that the basis on which a recommendation should be granted is unclear. Left unanswered are basic questions such as the standard of proof, burden allocation between the parties, and the factors in assessing whether a recommendation should be granted or denied. BOP regulations shed no light on these questions. *See* PROGRAM STATEMENT No. 5160.05, U.S. Department of Justice, Federal Bureau of Prisons, Section 9(b)(2) (2003) (mentioning only that the BOP must take into account "recommendations" from the sentencing court) (available at **https://www.bop.gov/policy/progstat/5160_005.pdf**). Indeed, federal law appears to contemplate a broad range of reasons for a recommendation. *See* 18 U.S.C. § 3621(b) (providing that the BOP shall consider "any statement by the court that imposed the sentence . . . (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate . . . ."). Accordingly, the court takes the status

## A. Jurisdiction to Issue a Recommendation

If a federal sentence is to be discharged after a state sentence, the BOP occasionally credits the prisoner for time served in the state prison by designating *nunc pro tunc* the state prison as the place where the federal sentence began. FCR at 3. "Only the Attorney General, through the BOP, may compute a prisoner's credits." *Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010) (per curiam). The Fifth Circuit, following several sister courts, has "held that before the Attorney General has made a determination of a prisoner's credits, there is no case or controversy ripe for review when the prisoner challenges his credits." *Id.* In *Pierce*, the petitioner filed a habeas action seeking an order from the federal court "that his federal sentence was to be served concurrently with the state sentence he was then serving." *Id.* at 159. Although the district court ultimately denied the petitioner's habeas petition, the Fifth Circuit reversed for lack of subject matter jurisdiction. *Id.* at 160. Only after the BOP has reviewed and ruled on a prisoner's *nunc pro tunc* request does a district court have jurisdiction to review the BOP's determination, and only then for abuse of discretion. *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990).

---

quo as its baseline in that Wallace bears the ultimate burden of demonstrating that a recommendation should be granted. Furthermore, given the sheer breadth of potential factors on which the court could theoretically grant a recommendation, the court limits itself only to the arguments put forward by the parties.

- 5 -

Although the Fifth Circuit's decision in *Pierce* appears at first blush to cover the instant motion, Wallace is not, properly speaking, "challenging his credits" within the meaning of *Pierce*. In *Pierce* and the cases cited therein, the prisoner filed a habeas petition seeking an "order" from the district court granting a nunc pro tunc request or otherwise allocating prison credits. See *Pierce*, 614 F.3d at 159 ("Pierce sought an order [through a habeas petition] stating that his federal sentence was to be served concurrently with the state sentence he was then serving."). Wallace's motion, on the other hand, asks merely for this court's "recommendation" encouraging the BOP to "retroactively designate the Texas prisons where he was previously incarcerated for service of his federal sentence." Brief in Support at 1. Such a recommendation is "only a non-binding recommendation" that the BOP credit Wallace's time spent in state custody and does not mandate conduct by the BOP. *Pineyro*, 112 F.3d at 45. Several circuits have either implicitly or explicitly recognized the power of district courts to make such recommendations to the BOP. See, e.g., *id.*; *United States v. Langham*, 670 Fed. App'x. 991, 992-93 (10th Cir. 2016) (noting that "[b]oth [18 U.S.C. § 3621(b)] and BOP regulations appear to recognize that district courts may offer such recommendations"); *McCarthy v. Warden*, 544 Fed. App'x. 52, 54-55 (3d Cir. 2013) (per curiam). Accordingly, the district court has jurisdiction to issue a recommendation in this case.

B.  Merits of a Recommendation

The government argues – and the FCR appears to accept – that Wallace is not entitled to a recommendation from this court for three reasons.  First, Wallace's state sentence was an "undischarged term of imprisonment" under the meaning of U.S.S.G. § 5G1.3(d), allowing for consecutive federal and state sentences.[2]  Response at 4.  Second, the judgment rendered by this court was silent as to whether Wallace's federal sentence should run concurrently with any later-imposed state sentence and that, by default, such silence should be interpreted as implying consecutive sentences.  *Id.* at 5.  Third, consecutive sentences further the goals of the criminal justice system under the factors laid out in 18 U.S.C. § 3553(a).  *Id*. at 5-7.  The court agrees that Wallace is not entitled to a recommendation from this court, but for somewhat different reasons.

---

[2]     The government locates the argument that § 5G1.3(d) applies under the heading "Wallace's state sentence was not imposed for conduct relevant to his federal charges."  Response at 4.  However, as discussed at length below, the applicability of § 5G1.3(d) does not turn on the "relevance" of the conduct that led to the state sentence.  Indeed, § 5G1.3(d) applies to "any other case" involving an "undischarged term of imprisonment." *Id.* (emphasis added).  The "relevance" of the conduct that led to the state sentence is instead germane only to § 5G1.3(c), which favors concurrent sentences.  The government therefore appears to confuse the *defensive* argument against applying subsection (c) with the *offensive* argument for applying subsection (d).

1. Sentencing Guidelines

a. *§ 5G1.3(d): Undischarged Term of Imprisonment*

The government contends, and the FCR concludes, that Wallace's sentence falls under U.S.S.G. § 5G1.3(d),[3] which provides the sentencing judge with discretion to determine whether the federal sentence runs "concurrently, partially concurrently, or consecutively to [a] prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Response at 4-5; FCR at 4-5. Section 5G1.3(d) applies only to federal sentences in which there are "other case[s] involving an undischarged term of imprisonment." In essence, the government argues that Wallace's preexisting state probation (during the pendency of which he received his federal sentence) constitutes "an undischarged term of imprisonment," and therefore falls under the purview of § 5G1.3(d). Response at 4-5. In response, Wallace argues that § 5G1.3(d) is inapposite. Objections 2. Specifically, Wallace asserts that § 5G1.3(d) "only appl[ies] to undischarged sentences" rather than "anticipated" sentences and that, because the state sentences for violating probation were nonexistent at the time that the federal sentence was imposed, the state sentences were not "undischarged" and, therefore, § 5G1.3(d) does not apply. Objections at 2 (emphasis in original). Wallace is correct that § 5G1.3(d) is inapplicable, but for different reasons.

---

[3] Both parties appear to agree that §§ 5G1.3(a)-(b) are inapplicable here.

The Fifth Circuit has not addressed the scope of an "undischarged term of imprisonment" within the meaning of § 5G1.3(d). *United States v. Hankton*, 875 F.3d 786, 794-95 (5th Cir. 2017) ("We have not addressed whether a defendant's previous term is 'undischarged' if he is on parole"). However, the great weight of authority has held "that the term 'imprisonment' in U.S.S.G. § 5G1.3(b) means actual incarceration, not parole." *United States v. Pray*, 373 F.3d 358, 362 (3d Cir. 2004) (collecting cases).[4] Of the five circuits to directly address the issue, only the Eighth Circuit has interpreted "imprisonment" under § 5G1.3 to include parole or probation, and only then under an interpretation of South Dakota law. *United States v. French*, 46 F.3d 710, 717 (8th Cir. 1995). Thus, irrespective of whether Wallace's preexisting term of probation was "undischarged" or "anticipated," Wallace's preexisting probation was not a "term of imprisonment."[5] Accordingly, subsection

---

[4] The Sentencing Guidelines in effect at the time of the Third Circuit's decision in *Pray* have since been revised. Under the then-current edition, § 5G1.3(b) provided the following: "If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(b) (2002); see *Pray*, 373 F.3d at 360. Although the Third Circuit read the phrase "undischarged term of imprisonment" in a slightly different context, the court sees no reason to depart from *Pray*'s interpretation of the phrase as applied to subsection (d) of the current Guidelines

[5] Even if the court assessed whether an "undischarged term of imprisonment" includes probation under state law (the appropriateness of which is doubtful, *Pray*, 373 F.3d at 362 ("The meaning of the term 'imprisonment' in [§ 5G1.3(d)] is a question of federal, not state, law.")), it would reach the same conclusion. See *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 653-54 (5th Cir.

(d) is inapplicable to Wallace's federal sentence.

Nor is the court persuaded by the government's additional argument that Sentencing Commission Application Note 4(C) demonstrates the applicability of § 5G1.3(d) to this case. *See* Response at 4. Note 4(C) clarifies subsection (d) in the following way: "Subsection (d) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervise release revoked. . . . [T]he Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." App. N. 4(C). The government argues that, because Wallace's probation was eventually revoked, the federal sentence should run consecutively to the state sentence. This reading is dubious. Although not entirely clear, it appears that Note 4(C) envisions circumstances in which the state probation was revoked prior to the imposition of the federal sentence, not subsequent to it. See *United States v. Davis*, 859 F.3d 572, 575 n.6 (8th Cir.), *cert. denied*, __ U.S. __, 138 S.Ct. 403 (2017), ("While [Note 4(C)] only specifically applies to cases where the state revocation occurs before the federal sentencing, the purpose of punishing crimes more seriously when committed during probation would still apply in this case."). Accordingly, the government incorrectly cites § 5G1.3(d) for guidance as to whether

---

2007) (finding that, in Texas state courts, "any probation following an order of deferred adjudication is not a sentence" and "that when adjudication is deferred, there can be no imposition or suspension of sentence because no punishment is assessed.") (internal quotation marks and citations omitted).

Wallace's federal sentence should run concurrently or consecutively.

b. *§ 5G1.3(c): Unrelated Conduct*

Although § 5G1.3(d) does not apply, the government correctly concludes that § 5G1.3(c) is similarly inapposite. Subsection (c) provides that "[i]f . . . a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction . . . , the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." The government argues that, even if the state sentence imposed as a result of Wallace's probation violation was an "anticipated sentence" at the time of Wallace's federal sentencing, subsection (c) does not apply because the "offense" for which Wallace received his state sentence is not "relevant conduct" to Wallace's federal sentence.

The court agrees with the government's argument. As pertinent here, the Sentencing Guidelines define "relevant conduct" as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *United States v. Wall*, 180 F.3d 641, 645 (5th Cir. 1999). A "common scheme or plan" is defined as "two or more offenses that are substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3 Application Note 5(B)(i). "Same course of conduct" is defined as conduct which is "sufficiently connected or related to each other as to warrant the

- 11 -

conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at Application Note 5(B)(ii). Factors include "degree of similarity of the offenses, the regularity . . . of the offenses, and the time interval between the offenses." *Id.* Quite clearly, the conduct underlying Wallace's state sentence is not "relevant" to the conduct for which he received his federal sentence. First, there was no "common scheme or plan" connecting the conduct underlying Wallace's state charges for possession of a controlled substance and theft and his federal charge for possession of a firearm. Regarding his controlled substances charge, Wallace was stopped by officers for speeding and was arrested by municipal officers on December 8, 2001. PSR ¶ 56. In a search incident to arrest, the officers found drugs and drug paraphernalia. *Id.* Regarding his theft charge, Wallace was arrested several months later on April 5, 2002 after attempting to steal "a GE air conditioner, a Stanley 20 piece wrench set, and a Stanley 33 piece socket set" from Wal-Mart. *Id.* ¶ 57. Wallace's state charges for drug possession and theft are wholly unlike his federal sentence for possession of a firearm. Although Wallace allegedly used or possessed drugs before he was arrested for possession of a firearm, PSR ¶ 13, this "connection" (if it can even be called one) is nowhere near sufficient to bring the state and federal charge under the purview of a "common scheme or plan." Additionally, Wallace's state charges occurred several months before his federal charge and are therefore unlikely to constitute a common scheme or plan. For the same reasons, the state and

federal charges cannot be considered as the "same course of conduct." Accordingly, § 5G1.3(c) does not apply to Wallace's federal sentence.

c. *Unrelated Conduct*

Although neither § 5G1.3(c) nor (d) apply to Wallace's federal sentence, the federal sentence should nevertheless run consecutively to his state sentence because the conduct for which Wallace received his state sentence is unrelated to the conduct which formed the basis for the instant federal sentence. The Fifth Circuit has held that, even outside the Sentencing Guidelines, "the default rule [is] that totally unrelated crimes should ordinarily receive distinct punishment." *United States v. Woods*, 440 F.3d 255, 260 (5th Cir. 2006). Indeed, "consecutive sentencing is an appropriate mechanism for imposing distinct punishment for separate criminal acts, and the defendant has no right to concurrent sentences imposed for two totally unrelated offenses." *United States v. Olivares-Martinez*, 767 F.2d 1135, 1137 (5th Cir. 1985) (internal citations omitted). This makes intuitive sense: wholly separate crimes deserve wholly separate punishments. As demonstrated above, the conduct resulting in Wallace's federal sentence is entirely distinct from the conduct resulting in his state probation. The mere fact that the conduct which resulted in his federal sentence happened also to result in the revocation of his state probation is an insufficient connection to warrant a single punishment, much less concurrent sentences.

Wallace retorts that the "'unrelated' nature of his state crimes" should not weigh into the court's calculus in deciding to issue a recommendation because federal prosecutors initiated a prosecution before the state court could impose a sentence despite the fact that statute authorities had primary custody. Objections at 3-4. In Wallace's view, this fact "put the [federal] sentencing court in a difficult spot – it had to impose a sentence that is sufficient, but not greater than necessary, to account for Mr. Wallace's current crime *and* for his entire criminal history," including his state probation for the controlled substance and theft crimes. *Id.* (emphasis in original). This argument, however, is unavailing. Wallace is not entitled to have his federal sentence shortened because the state court eventually revoked his probation in an unrelated case. Indeed, the federal sentencing court was required to account for Wallace's probation in calculating his criminal history category. *See* U.S.S.G. § 4A1.2(f) ("A diversionary disposition [e.g., deferred prosecution] resulting from a finding or admission of guilt . . . in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ."). Wallace pleaded guilty to the theft and controlled substances charges and consequently received "deferred adjudication probation." PSR ¶¶ 56-57. Whether the state court decided to continue or revoke Wallace's probation for that crime was ultimately irrelevant to the sentencing court's criminal-history inquiry. Accordingly, Wallace's federal sentence should run consecutively to his state sentence.

2.  District Court Judgment

The FCR also grounds its recommendation on the nature of the sentencing court's original judgment.  Specifically, the FCR concludes that, because "Wallace's federal judgment is silent on the issue" of whether the sentences should run concurrently or consecutively, "his federal sentence should run consecutive to this previously served state sentence."  FCR at 5-6.  This conclusion appears to be predicated on 18 U.S.C. § 3584(a), which provides in relevant part that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  *Id.*; see also Response at 5.  Wallace counters, however, that the Supreme Court in *Setser v. United States*, 566 U.S. 231 (2012), "already considered and rejected the argument that § 3584(a) governs the district court's sentencing or recommendations" in cases such as this.  Objections at 3.  Although Wallace is narrowly correct that *Setser* foreclosed application of § 3584(a) to the circumstances presented in this case, Wallace misconstrues the implications that result from this fact.  In *Setser*, the Supreme Court considered whether a district court had authority to order a defendant to serve a federal sentence consecutive to "any [future] state sentence imposed for [the] probation violation."  *Setser*, 566 U.S. at 233.  The Court began by noting that subsection (a) "addresses only 'multiple terms of imprisonment . . . imposed . . . at the same time' and 'a term of imprisonment . . . imposed on a defendant who is already subject to an

undischarged term of imprisonment.'" *Id.* at 234-35 (quoting § 3584(a)). On this reading, the Court concluded that the statute did not cover the circumstance in which a federal court imposed its sentence consecutively to an as-yet-imposed state sentence because "the state sentence is not imposed at the same time as the federal sentence, and the defendant was not already subject to that state sentence." *Id.* at 235.

Nevertheless, the Supreme Court read § 3584 "in light of the common law background against which" the statute was enacted. *Id.* (internal quotations and citations omitted). Under the common law, "[j]udges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings . . . . And a large majority of the federal appellate courts addressing the question have recognized a similar authority in the context here, where a federal judge anticipates a state sentence that has not yet been imposed." *Id.* at 236. Accordingly, the *Setser* Court "[found] nothing in the Sentencing Reform Act . . . to show that Congress foreclosed the exercise of district courts' sentencing discretion in these circumstances." *Id.* at 236-37. Although the Court acknowledged that § 3584 functioned "as a limitation of [sentencing] authority that already exists," "[t]he mere acknowledgment of the existence of certain pre-existing authority (and regulation of that authority) in no way implies a repeal of

other pre-existing authority." *Id.* at 238. In other words, although § 3584 does in fact limit certain aspects of the sentencing court's authority, § 3584 does not cover the situation in which a federal court confronts an anticipated state sentence – precisely the circumstance at bar. Instead, sentencing courts exercise the long-held "discretion to select whether the sentences they impose will run concurrently or consecutively." *Setser*, 566 U.S. at 235. Accordingly, the court undoubtedly had the power to order that Wallace serve his federal sentence consecutively to his state sentence. This power is located in the common law, however, not under § 3584.

More to the point, nothing in Wallace's objections displaces the presumption that a sentencing court's silence on the consecutive-or-concurrent issue is to be construed as imposing a consecutive sentence (at least when the conduct underlying such sentences are unrelated). See *Free v. Miles*, 333 F.3d 550, 553 (5th Cir. 2003). Wallace argues that such a presumption would "preclude the BOP from *ever* designating a state facility for service of a federal sentence, absent a federal court order." Objections at 3 (emphasis original). This is incorrect for two reasons. First, nothing about the presumption toward consecutive sentences strips the BOP of its ultimate authority to designate the facility in which a defendant's federal sentencing term will begin. The presumption is limited to federal courts and does not necessarily apply to the BOP. See *Free*, 333 F.3d at 553 (applying the presumption toward consecutive sentences in the context of direct appeal). Second and relatedly,

the BOP has formulated its own procedures in determining whether a state facility should be designated *nunc pro tunc* and, by its own terms, is not tied to this presumption. *See generally* Program Statement 5160.5(9). Accordingly, the original judgment should be read in favor of consecutive sentences.

3. Section 3353(a) Factors

Finally, the government and FCR conclude that the factors laid out in 18 U.S.C. § 3553(a) weigh toward consecutive sentences. *See* FCR at 6-7; Response at 5-6 ("Wallace's sentences should run consecutively in order to reflect the seriousness of his offense and criminal history, deter him from criminal conduct, and protect the public."). Wallace appears to challenge only the result of the FCR's § 3553(a) balancing, not its overall applicability to this case. In short, Wallace argues that the sentencing court's 293-month sentence was more than sufficient to compensate for Wallace's federal crime and his criminal history, including the sentences that Wallace eventually received for violating his probation. *See* Objections at 4.

"Under [§ 3553(a)], the Court considers the following factors in determining the particular sentence to be imposed: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, deter criminal conduct, protect the public, and provide educational and other treatment to the defendant; (3) the kinds of sentences available; (4) the kinds of sentence and

sentencing range established by the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants; and (7) the need to provide restitution to any victims." FCR at 6 (citing § 3553(a)). Taking into account the above factors, the FCR concluded that the § 3353(a) factors strongly support consecutive sentences. In particular, the FCR noted the serious nature and circumstances of Wallace's offense:

> On August 21, 2002, Wallace was discovered within 200 feet of an elementary school in Mesquite, Texas. PSR ¶ 8. He was armed with a .38-caliber revolver and items comprising a 'rape kit'-a pair of hand cuffs, rubber surgical gloves, a rope, a hook bladed knife, and a sexual device–pictures cut from adult magazines, and sexually explicit notes about girls and women he had observed with their license plate numbers. PSR ¶¶ 8-12. Wallace admitted that the purpose of getting the license plate numbers was to look up the girls' and women's addresses. PSR ¶ 12. He resisted law enforcement when they tried to disarm him. PSR ¶¶ 10-11.

FCR at 6-7. Additionally, the FCR recognizes Wallace's "extensive" criminal history, including several violent crimes. *See, e.g.*, PSR ¶¶ 43, 50-51 (Aggravated Robbery), 44-45, 53-54 (Theft and Unlawfully Carrying a Weapon). The FCR concludes that such history "demonstrates that [Wallace] is a danger to the community." FCR at 7.

The court agrees with the FCR's assessment of the § 3353(a) factors as weighing against issuing a recommendation in this case. Although Wallace is correct that the sentence imposed by the sentencing court was lengthy – 293 months' imprisonment – such a sentence was ultimately within the guidelines range (though

the highest possible sentence under the suggested range).  However, given the seriousness of Wallace's crime and the circumstances surrounding it, as well as Wallace's lengthy criminal history report spanning over three decades, the § 3553(a) factors weigh toward consecutive sentences.  Minimally, the § 3553(a) balancing certainly does not weigh so heavily in Wallace's favor so as to overcome the deference owed to the original judgment and the criminal justice system's interest in finality.

### III.  CONCLUSION

For the reasons set forth above, the court **DENIES** Wallace's Motion for Recommendation and **ADOPTS** the FCR except for Parts II.1 and II.2.


**SO ORDERED**.

May 7, 2021.

*C. Joe Fish*
A. JOE FISH
Senior United States District Judge